IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Sarvint Technologies, Inc., | Civil Action File No. |
| Plaintiff, | 1:15-cv-00072-TCB |
| v. | |
| Sensoria, Inc., | |
| Defendant. | |

## DEFENDANT SENSORIA INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................3

I.    Sarvint does not and will not suffer irreparable harm. ....................................3

    A.    Sensoria does not sell the accused t-shirt and sports bra in the U.S. ....4

    B.    Sarvint fails to prove that Sensoria's alleged infringement is causing irreparable harm. ...................................................................................5

II.    Sarvint is not likely to succeed on the merits of its infringement claims. ....10

    A.    Sarvint does not have standing to sue without the patent owner. .......11

    B.    Sarvint has no any admissible evidence of infringement...................13

        1.    Sarvint fails to provide evidence that the claimed method is performed by Sensoria. ..................................................................13

        2.    Sarvint provides no admissible evidence of infringement............14

    C.    Sensoria's smart socks do not infringe the '731 Patent. .....................16

        1.    The Sensoria smart socks do not measure "vital signs." ..............17

        2.    The Sensoria sensors are not made "from fully-conductive fabric." 19

        3.    The smart sock sensors do not include "individually conductive fibers."...............................................................................................21

        4.    The Sensoria smart socks do not meet the limitation requiring "the electrical lead being formed from one of the integrated individually conductive fibers."...............................................................................23

III.    The balance of harms tips in favor of Sensoria. ...........................................24

IV.    The public interest does not favor an injunction. ..........................................25

CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*ADA Solutions, Inc. v. Engineered Plastics, Inc.*, 2011 U.S. Dist. Lexis 142067 (D. Mass. Dec. 09, 2011)................................................................5

*Apple Inc. v. Samsung Electronics Co.*, 695 F.3d 1370 (Fed. Cir. 2012)........................................................................................................3

*Ascend Geo, LLC v. Oyo Geospace Corp.*, 2009 U.S. Dist. LEXIS 104129 (S.D. Tex. Nov. 4, 2009).......................................................10

*Astra-Zeneca LP v. Apotex, Inc.*, 633 F.3d 1042 (Fed. Cir. 2010)........................10

*ATLeisure Inc. v. Ace Evert Inc.*, Case No. 1:12-cv-1260-CAP (N.D. Ga. 2013) (Dkt 96, Order)................................................................9

*Aurora World, Inc. v. TY Inc.*, 719 F. Supp. 2d 1115 (C.D. Cal. 2009).................25

*Automated Merch. Sys., Inc. v. Crane,* Co., 357 Fed. Appx. 297 (Fed. Cir. 2009).............................................................................. 3, 5, 10

*Cordance Corp. v. Amazon.com, Inc.,* 730 F. Supp. 2d 333 (D. Del. 2010)...................................................................................................7, 9

*Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241 (Fed. Cir. 2005)............................14

*High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551 (Fed. Cir. 1995)................................................................7

*Humanscale Corp. v. CompX Int'l Inc.*, 2010 U.S. Dist. LEXIS 42083 (E.D. Va. Apr. 29, 2010).........................................................................8

*Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679 (Fed. Cir. 1990).................24

*IMO Indus. Inc. v. SEIM S.r.L*, 2006 U.S. Dist. LEXIS 79487 (W.D.N.C. Oct. 17, 2006).........................................................................13

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Calif., Inc.*, 248 F.3d 1333 (Fed. Cir. 2001).........................................................................11

*Interface, Inc. v. Tandus Flooring, Inc.*, 2013 U.S. Dist. LEXIS 158608 (N.D. Ga. Nov. 5, 2013)............................................................ 15, 16

## TABLE OF AUTHORITIES

*Limelight Networks, Inc. v. Akamai Tech.*, 134 S. Ct. 2111 (2014) ......................13

*Litton Sys. Inc. v. Sundstrand Corp.*, 750 F.2d 952 (Fed. Cir. 1984) .....................24

*McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 683 F. Supp.2d 740
  (N.D. Ill. 2010) ...................................................................................................5

*Microstrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344 (Fed. Cir.
  2005) ...................................................................................................................17

*NTP, Inc. v. RIM,  Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005)........................................15

*Open Text, S.A. v. Box, Inc.*, 36 F. Supp. 3d 885 (N.D. Cal. 2014)..........................8

*Pediatric Medical Devices, Inc. v. Indiana Mills & Mfg., Inc.*, Case
  No. 1:11-cv-02613-TCB (N.D. Ga. April 26, 2013) (Dkt 47, Order).................11

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296
  (Fed. Cir. 2011) .................................................................................................18

*Roper Corp. v. Litton Sys., Inc.,* 757 F.2d 1266 (Fed. Cir. 1985) ............................4

*Roton Barrier, Inc. v. Stanley Works,* 79 F.3d 1112 (Fed. Cir. 1996)....................17

*Telebrands Corp. v. Del Labs, Inc.*, 719 F.Supp.2d 283 (S.D.N.Y.
  2010)...................................................................................................................12

*Tiber Labs., LLC v. Hawthorn Pharms.*, Inc., 527 F. Supp. 2d 1373
  (N.D. Ga. 2007) ...................................................................................................3

*Tuna Processors, Inc. v. Haw. Int'l Seafood, Inc.*, 327 Fed. Appx. 204
  (Fed. Cir. 2009) .................................................................................................23

*UTStarcom, Inc. v. Starent Networks Corp.*, 2005 U.S. Dist. LEXIS
  40520 (N.D. Cal. Dec. 6, 2005)..........................................................................14

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d
  870 (Fed. Cir. 1991) ..........................................................................................12

*Voile Mfg. Corp. v. Dandurand*, 551 F. Supp. 2d 1301 (D. Utah 2008) ................25

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) ...........................3

## <u>INTRODUCTION</u>

The inventors of U.S. Patent No. 6,970,731 (the "'731 Patent") have tried and failed for almost fifteen years to commercialize a product embodying the '731 Patent.  By contrast, Defendant Sensoria is a start-up company that, after years of research and development, successfully commercialized its smart socks and anklet—products that are wholly distinct from the invention claimed in the '731 Patent.  Not only has Sarvint sued Sensoria without a reasonable basis to claim infringement, but it now seeks the drastic remedy of a preliminary injunction.  Sarvint does not come close to meeting the heavy burden required to obtain such relief.

Sarvint does not and will not suffer irreparable harm from Sensoria's ***past*** sales of the accused t-shirt and sports bra and continued sales of the accused socks (the "smart socks").  Sensoria does not currently sell and has no intention to sell in the U.S. the accused sports bra or t-shirt, and thus Sarvint cannot show it is being irreparably harmed by those products.  Sarvint has not shown that any other alleged harm is anything more than speculative.  While it cries harm to competition and lost market share, Sarvint concedes it has not offered to sell or sold a single product that competes with Sensoria's products.  Nor does Sarvint explain how Sensoria's alleged infringement caused any purported losses.

Sarvint also has not established and cannot establish a likelihood of success on the merits of its infringement claim. The '731 Patent recites "a method for monitoring the vital signs of a subject comprising applying a fabric-based sensor to the subject and connecting the sensor to a monitor." Sarvint ignores this and improperly treats it as a product claim. Further, Sarvint's infringement claim depends on attorney-generated claim charts and conclusory assertions from a Sarvint representative. Aside from these evidentiary problems, when the asserted claim 1 of the '731 Patent is properly construed, it is plain that Sensoria's smart socks—the only accused product Sensoria currently sells in the U.S.—do not meet every limitation of claim 1 of the Patent.

Sarvint has also failed to demonstrate that the balance of harms tips in its favor or that the public interest favors an injunction. And that is not surprising — Sarvint cannot be harmed because it lacks a product in the U.S. marketplace, and Sensoria brought one to the market through independent development. Further, Sensoria's business would be severely damaged by the granting of a preliminary injunction. Accordingly, the Court should deny Sarvint's Motion for Preliminary Injunction.

## ARGUMENT

A plaintiff seeking a preliminary injunction in a patent infringement case "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Apple Inc. v. Samsung Electronics Co.*, 695 F.3d 1370, 1373-74 (Fed. Cir. 2012).[1] "A movant must establish both a likelihood of success on the merits and irreparable harm . . . [T]he district court may deny a preliminary injunction based on the movant's failure to establish either of these two crucial factors." *Tiber Labs., LLC v. Hawthorn Pharms.*, Inc., 527 F. Supp. 2d 1373, 1378 (N.D. Ga. 2007).

## I.      Sarvint does not and will not suffer irreparable harm.

Sarvint has not met its burden of proving "that irreparable injury is likely in the absence of an injunction." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008). The burden is "on the patentee to demonstrate that its potential losses cannot be compensated by monetary damages." *Automated Merch. Sys., Inc. v. Crane,* Co., 357 Fed. App'x. 297, 301 (Fed. Cir. 2009).

---

[1] Because a preliminary injunction enjoining patent infringement under 35 U.S.C. § 283 involves "substantive matters unique to patent law," Federal Circuit law applies. *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012).

## A.    Sensoria does not sell the accused t-shirt and sports bra in the U.S.

Sensoria does not now make, sell, use, or offer to sell within the U.S, and does not import into the U.S., the accused t-shirt or sports bra.  Declaration of Davide Vigano ("Vigano Decl.")  ¶19.  Nor does it have any intent to do so in the future.  *Id*. ¶20.  This alone precludes a finding of irreparable harm with respect to those products.

Previously, Sensoria had worked with ComfTech S.r.l., which designed and manufactured the accused "powered by ComfTech" sports bra and t-shirt. *Id*. ¶ 15. During the course of Sensoria's business relationship with ComfTech, however, issues arose relating to availability and performance consistency of these products. *Id*. ¶16.  Sensoria initiated its final order for the "powered by ComfTech" accused t-shirt and sports bra in April 2014, and Sensoria terminated its relationship with ComfTech in October 2014—months before Sarvint initiated this lawsuit.  *Id*. ¶17. Sensoria no longer sells or offers for sale the accused t-shirt and sports bra in the U.S. and has no intention of doing so in the future.  *Id*. ¶20.

The absence of present or future infringing activity precludes a finding of irreparable harm.  *Roper Corp. v. Litton Sys., Inc.,* 757 F.2d 1266, 1273 (Fed. Cir. 1985) (no irreparable harm where defendant was not currently producing or planning to produce the accused product); *ADA Solutions, Inc. v. Engineered*

4

*Plastics, Inc.*, 2011 U.S. Dist. Lexis 142067, at *1-2 (D. Mass. Dec. 09, 2011) (finding no irreparable harm where "the non-movant has or will soon cease the allegedly infringing activities, thus making an injunction unnecessary.").

To the extent Sarvint faced any past harm from alleged infringing activities as to the accused t-shirt and sports bra (it did not), that harm may be remedied through monetary damages. *See e.g.*, *McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 683 F. Supp.2d 740, 748 (N.D. Ill. 2010) ("any damage that was caused by Method 1 is in the past and properly the subject of money damages."). Because Sarvint cannot prove irreparable harm with respect to those products, the motion for preliminary injunction should be denied. *Tiber Labs,* 527 F. Supp. 2d at 1378.

### B.   Sarvint fails to prove that Sensoria's alleged infringement is causing irreparable harm.

Irreparable harm—whether related to lost market share, lost business opportunities, lost goodwill, or price erosion—"must be proven (or at least substantiated with some evidence) in order for it to support entry of a preliminary injunction." *Automated Merch. Sys.,* 357 Fed. App'x. at 301.

Sarvint's entire irreparable harm argument relies on the erroneous assumption that Sensoria and Sarvint compete in the relevant market, and that Sarvint would have been "first to market" but for Sensoria's infringement. Sarvint's purported economic expert, Dr. Challagalla, incorporates these erroneous

assumptions in claiming that Sarvint suffers irreparable harm. Yet neither Sarvint's argument nor Dr. Challagalla's conclusions can withstand scrutiny.

First, Dr. Challagalla's conclusions are premised on a definition of the relevant market that is so broad that the inclusion or exclusion of the accused products would have no effect on that market. This purported market of "wearables for the usage situation of sports and fitness, and, in particular, on smart apparel in sports and fitness"[2] includes products ranging from the Google Glasses to the Apple iWatch to heart rate monitors—most of which do not conceivably compete with products at issue here. Moreover, this market is so well-established that Sarvint could never have enjoyed the "first mover advantage" it claims. *See* Declaration of Douglass Kidder, at ¶¶ 19-24, 27–28 ("Kidder Decl.").

Second, Sarvint's complaints that it *could* compete or gain an advantage in the market but for Sensoria's alleged infringement are speculative at best. *See id*. at ¶ 41–48. Sarvint unquestionably has no commercial embodiment of the '731 Patent or any other product that competes with Sensoria. Sarvint asserts without substantiation that it is "in the process of designing a number of products that incorporate the technology of the '731 patent." [Dkt. 21-1 at 6.] Sarvint does not suggest that it does—or even can—develop or commercialize *any* product that

---

[2] Declaration of Goutam Challagalla [Dkt 21-5] at p. 4.

competes with Sensoria's smart socks (the only accused product still being sold by Sensoria).   The suggestion that a theoretical Sarvint t-shirt (that, as discussed below, measures vital signs) and Sensoria's smart socks (that, as discussed below, measures cadence and foot pressure) actually compete with one another is completely nonsense.[3]

There is no product competition between the parties, and thus no possible irreparable harm.  *See Cordance Corp. v. Amazon.com, Inc.,* 730 F. Supp. 2d 333, 339 (D. Del. 2010) (no irreparable harm where the two parties do not sell competing products); *High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995) ("the lack of commercial activity by the patentee is a significant factor in the [irreparable harm] calculus.").[4]

Third, Sarvint and Dr. Challagalla erroneously assume that being "first to market" would have allowed Sarvint some advantage, and that Sarvint has lost that "advantage" from failure to be "first."   But there is no evidence that being first to market necessarily provides any type of advantage in a dynamic high tech market.

---

[3] Notably, Sarvint does not (either in its Motion or on its website) even assert that its future t-shirt will be a commercial embodiment of the '731 Patent.

[4] The cases cited by Sarvint in support of its irreparable harm argument [Dkt 21-1 at 14-23] address only situations where the parties compete with one another in the relevant market, and are thus inapposite to the situation here.

Kidder Decl. ¶¶33–40 (discussing how Apple nearly went bankrupt despite being first to market in many respects).

Further, Sarvint fails to specify what market share or which customers will allegedly be lost, or how its goodwill has been harmed. Such unsupported contentions of loss do not constitute irreparable harm. *See Open Text, S.A. v. Box, Inc.*, 36 F. Supp. 3d 885, 906 (N.D. Cal. 2014) (no irreparable harm where the plaintiff "has not provided to the Court, with any level of specificity, what sales have been lost to [defendant] Box, what [plaintiff's] Open Text's market share is in relevant market, or any evidence of actual lost customers going to [defendant]"). [5]

And, here, Sarvint's inability to compete or commercialize a product likely has nothing to do with Sensoria's alleged infringement.  There is simply no evidence that Sarvint can develop and bring to market a product to compete with Sensoria.  Kidder Decl. ¶¶44–48.  A commercial embodiment of the '731 Patent has eluded the inventors and licensees for roughly 15 years—long before Sensoria developed its own technology.  *See* [Dkt. 21-1 at 5-6; Dkt. 21-3 at ¶17.]  The assignee of the '731 Patent (Georgia Tech Research Corporation, or "GTRC") first

---

[5] Nor is it accurate for Sarvint to contend that the relatively short remaining life span of the patent necessitates a finding of harm. *See e.g., Humanscale Corp. v. CompX Int'l Inc.*, 2010 U.S. Dist. LEXIS 42083, at *13 (E.D. Va. Apr. 29, 2010) ("the balance of the hardships tips in favor of [the infringer] because of the short life left on the [infringed patents]").

attempted to commercialize the technology embodied in Patent in the year 2000. [Dkt. 21-1 at 5.]   An exclusive license was provided to Athena Ventures (which created a related entity, Sensatex, Inc., with which both inventors were involved)[6], for the purpose of carrying out the commercialization.  *Id*.  Although it held the license for over a decade, Athena failed in its commercialization efforts. *Id*.

No irreparable harm may be found where Sarvint's failure to commercialize and compete is "attributable only to [the plaintiff's] own poor business decisions." *Cordance Corp.,* 730 F. Supp. 2d at 339; *ATLeisure Inc. v. Ace Evert Inc.*, Case No. 1:12-cv-1260-CAP (N.D. Ga. June 6, 2013) (Dkt 96, Order) at 21 ("*AtLeisure*") (Harris Decl., Ex. 1) (speculation that defendant's infringement "threatens the existence of plaintiff's . . . and leaves plaintiff without the ability to compete" is insufficient to constitute irreparable harm).

Importantly, none of these alleged harms (even if they were suffered) is attributable to Sensoria.  Sarvint's "inability to pinpoint lost sales or market share ***due to*** [Sensoria's] infringement" is fatal to Sarvint's claims.  *ATLeisure ,* at 23 (emphasis added).   There are unquestionably many competitors in the relevant

---

[6]  One inventor, Dr. Jayaraman "[s]erved as COO/Head, Science of Technology at Sensatex, Inc," and the other, Sunmee Park worked as a consultant for Sensatex, Inc. to "[e]nhance the Smart Shirt System[.]  *See* Declaration of Rachael Harris ("Harris Decl."), Exs. 2-3.

market.   *See* Kidder Decl. ¶50; Vigano Decl. ¶51. The existence of these competitors undermines Sarvint's assertion that Sensoria caused harm. *See e.g, Ascend Geo, LLC v. OYO Geospace Corp.*, 2009 U.S. Dist. LEXIS 104129, at *10 (S.D. Tex. Nov. 4, 2009) (finding no irreparable injury where "there are two significant competitors who are at least as likely as [the patentee] to obtain any business that [the defendant]").   In sum, the theoretical harm claimed cannot support Sarvint's request for preliminary relief.[7]

## II.   Sarvint is not likely to succeed on the merits of its infringement claims.

"For a patentee to establish that it is likely to succeed on the merits, it 'must demonstrate that it will likely prove infringement of one or more claims of the patents-in-suit, and that at least one of those same allegedly infringed claims will also likely withstand the validity challenges presented by the accused infringer." *Astra-Zeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010). Determining infringement first requires the Court to "construe the asserted claims, and then compare the properly construed claims to the allegedly infringing devices, systems, or methods." *NTP*, Inc., 418 F.3d at 1311.   Claim terms are generally given their ordinary and customary meaning as understood by a person of ordinary

---

[7]   To the extent Sarvint could prove any harm, such harm could be remedied through monetary damages.   *See* Kidder Decl. ¶¶ 46-55.   There is simply no presumption that money damages would be inadequate. *Automated Merch.*, 357 F. App'x at 301 (lost market share not necessarily irreparable).

skill in the art at the time of the invention when read in the context of the patent's intrinsic record—the claim language, specification, and prosecution history. *Phillips v. AWH Corp.* 415 F.3d 1303, 1317 (Fed. Cir. 2005); *Pediatric Medical Devices, Inc. v. Indiana Mills & Mfg., Inc.*, Case No. 1:11-cv-02613-TCB (N.D. Ga. April 26, 2013) (Dkt 47, Order) at 5 (Harris Decl., Ex. 7).

Sarvint cannot show it is likely to succeed on the merits.  First, Sarvint has not shown that it has standing to sue without joining the patent owner, GTRC. Second, Sarvint has not provided admissible evidence of infringement by Sensoria. Third, the smart socks do not meet all of the limitations of claim 1 of the '731 Patent.  Each point is addressed below.

## A.   Sarvint does not have standing to sue without the patent owner.

Sarvint has not demonstrated that it has standing to sue without joining the rightful patent owner, GTRC.  Generally, an exclusive licensee may sue an alleged infringer "in the name of, ***and jointly with***, the patent owner." *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Calif., Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001), *overruled on other grounds,* (emphasis added).  An exclusive licensee has standing to sue alone only when it holds "all substantial patent rights."  *Id.*

Whether Sarvint is, in fact, an exclusive licensee and holds all substantial patent rights depends on the substance of the transferred patent rights and the

parties' intentions.  *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991).  For example, the terms and scope of the license, the rights retained by GTRC, and the right of Sarvint to exclude others from practicing the '731 patent are relevant to the standing issue.  *See e.g.*, *Telebrands Corp. v. Del Labs, Inc.*, 719 F.Supp.2d 283, 290 (S.D.N.Y. 2010) ("'[a]ll substantial rights' usually include the right to sue for infringement (without leave of the patent owner) and the right to grant licenses").

Sarvint fails to provide an evidentiary basis to support that it is an exclusive licensee under the '731 Patent and that it has the right to sue alone —instead choosing to rely on conclusory allegations that it is an "exclusive licensee." [Dkt. 19 at ¶¶ 16-17.]  Notably absent from Sarvint's pleading is any assertion Sarvint has the right to *exclude others* from practicing the '731 Patent, which is a significant "substantial right" when determining standing.  *See, e.g.,Telebrands Corp.*, 719 F.Supp.2d at 290.  Further, Sarvint's own admissions indicate that the purpose of its license was merely to "assist the Inventors with raising capital and commercializing the '731 patent." [Dkt. 21-1 at 6.]

Sarvint has provided no factual basis that it has standing to sue for patent infringement without joining GTRC.  Without standing, Sarvint cannot prove it is entitled to any preliminary relief.  *See e.g., IMO Indus. Inc. v. SEIM S.r.L*, 2006

U.S. Dist. LEXIS 79487, at *3 (W.D.N.C. Oct. 17, 2006) ("IMO does not have standing to bring a suit for infringement, and therefore, IMO cannot show likelihood of success on the merits of their underlying case.").

**B.    Sarvint has no any admissible evidence of infringement.**

Sarvint also fails to show a likelihood of success on its infringement claims. Sarvint (1) fails to set forth evidence that Sensoria performs the claimed method; and (2) relies exclusively on attorney argument and conclusory statements in support of its infringement claims.

**1.    Sarvint fails to provide evidence that the claimed method is performed by Sensoria.**

Sarvint ignores that claim 1 is a method claim and not a product claim. A defendant does not infringe a method claim unless all steps of the claimed method are carried out. *Limelight Networks, Inc. v. Akamai Tech.*, 134 S. Ct. 2111, 2117 (2014). Where, as here, performance of all of the claimed steps cannot be attributed to a single entity, direct infringement cannot be found, *Id.* at 2118.

Claim 1 of the '731 Patent recites "a ***method*** for monitoring the vital signs of a subject comprising ***applying*** a fabric-based sensor ***to the subject*** and ***connecting*** the sensor to a monitor…" '731 Patent at 6:24:25 (emphasis added). But Sarvint does not, and cannot, assert that Sensoria meets that limitation merely by manufacturing and selling the accused products, as that process does not require

"applying" the sensor to the subject or "connecting" that sensor to a monitor.  *See e.g., Harris Corp. v. Ericsson Inc*., 417 F.3d 1241, 1256 (Fed. Cir. 2005) (the method claim "can therefore be directly infringed only by one who uses the system, not by one who makes or sells the components of the system.").

Because claim 1 of the '731 patent is directed to a method, Sarvint is required to prove that it is likely to succeed on a claim of ***indirect*** infringement. Yet, Sarvint does not even argue—let alone produce evidence in support of— indirect (either contributory or induced) infringement by Sensoria.  *See e.g., UTStarcom, Inc. v. Starent Networks Corp.*, 2005 U.S. Dist. LEXIS 40520, at *41 (N.D. Cal. Dec. 6, 2005) ("Its evidence as to indirect infringement is deficient because it proffered no evidence that there are no substantial non-infringing uses of the ST16, nor that Starent actively and knowingly induced others to engage in the patented method.").  For this reason alone, Sarvint cannot show a likelihood of success on the merits.

### 2.        Sarvint provides no admissible evidence of infringement.

Sarvint's direct infringement argument rests improperly and exclusively on attorney arguments and conclusory statements from Sarvint's own representative. Infringement requires that the Court first analyze the scope and meaning of the patent claims, and then compare the claims to the accused devices to ensure that

every claim limitation or its equivalent be found in the accused device. *NTP, Inc. v. RIM, Ltd.*, 418 F.3d 1282, 1311 (Fed. Cir. 2005).

Sarvint asserts that the patent claims should be interpreted "in accordance with their plain meaning," but gives no guidance as to what that plain meaning is. Sarvint then makes the conclusory assertion that "[e]ach of Sensoria's fitness sports shirt, sock, and bra products include all the claim limitations recited above." [Dkt 21-1 at 11.]  Sarvint relies exclusively on attorney-manufactured claim charts to support that conclusion.  [*See* Dkt 21-4, 21-5, 21-6.]

But attorney argument, including infringement contentions, is not evidence. Instead, a party must present "[e]vidence that goes beyond the unverified allegations of the pleadings and motion papers."  *Interface, Inc. v. Tandus Flooring, Inc.*, 2013 U.S. Dist. LEXIS 158608, at *7 (N.D. Ga. Nov. 5, 2013).  At a minimum, this evidence "must bear ***some*** indicia of reliability." *Id*.

Far from "indicia of reliability," the charts [Dkt 21-4, 21-5, 21-6] represent unverified descriptions of the accused products and attorney argument regarding how claim 1 of the '731 Patent applies to those products.  Sarvint does not contend that it examined or tested Sensoria's products in creating the charts, and it is unlikely Sarvint did so with respect to the accused sports bra or socks.  Vigano Decl. ¶50.

Sarvint cannot transform the claim charts into evidence by "incorporating" them into the declaration of Sarvint's corporate representative, Dr. Jayaraman.  Dr. Jayaraman does not explain who drafted the charts or assert that he has personally reviewed the accused products.  [Dkt 21-3.]  Instead, he summarily concludes that "each of the elements of claim 1 is found in each of Sensoria's accused products in the manner described in the respective claim charts."  [*Id.*] Sarvint, therefore, provided no admissible evidence required to show that Sensoria infringes the '731 Patent.  *Interface, Inc.,* 2013 U.S. Dist. LEXIS 158608, at *9-10.

**C.    Sensoria's smart socks do not infringe the '731 Patent.**

The only accused product that Sensoria presently sells in the U.S.—the smart socks—does not infringe the '731 Patent.  Claim 1 of the '731 Patent recites:

> A method for ***monitoring the vital signs*** of a subject comprising applying a fabric-based sensor to the subject and connecting the sensor to a monitor, the fabric-based sensor comprising:
>
> (a) a knitted or woven ***fully-conductive fabric including one or more individually conductive fibers*** integrated therein by the process of knitting or weaving the fabric, each conductive fiber being ***individually conductive prior to incorporation into the fabric in the absence of conductivity imparted to the fabric or to the fibers after incorporation into the fabric***; and
>
> (b) an electrical lead for connection to a connector, ***the electrical lead being formed from one of the integrated individually conductive fibers***; and
>
> (c) a connector connected to the electrical lead.

16

Harris Decl., Ex. 4. (emphasis added).

There are at least four reasons why the Sensoria smart socks do not infringe: (1) they do not measure vital signs; (2) their sensors are not made out of fully-conductive, or even conductive, fabric; (3) their sensors are not comprised of individually conductive fibers; and (4) their electrical leads are comprised of different fibers than the sensors.   The differences are clear, and Sarvint's allegations of infringement are devoid of merit.

"Infringement requires that every limitation of a claim be met in the accused structure either exactly or by an equivalent." *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1125 (Fed. Cir. 1996).  Where an element of a claim is missing in the accused product or process, there is no infringement as a matter of law. *Microstrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005).

### 1.        The Sensoria smart socks do not measure "vital signs."

The Sensoria smart socks do not practice "[a] method for monitoring the vital signs of a subject. . . " '731 Patent 6:23.[8]  Instead, the smart socks measure pressure, cadence, and other gait-related data.  Vigano Decl. ¶¶22, 23, 38, 43.

The Court should construe the limitation "monitoring vital signs" to mean "monitoring an essential body function, namely respiration rate, pulse,

---

[8] Sarvint has treated the preamble language as a limitation of claim 1 of the '731 Patent.  [*See* Dkt 21-5 (Ex D to Plaintiff's Motion for Preliminary Injunction).]

temperature, blood pressure, EKG, or EEG."   The patent specification defines "vital signs" by specifically stating that the sensor can monitor "respiration, pulse, temperature, EKG, [or] EEG[.]"   '731 Patent at 5:66-67.

The emphasis on "vital signs" is prevalent throughout the patent's disclosure.  For example, the '731 patent states "[t]he present invention relates to a fabric-based sensor for monitoring ***vital signs*** or other electrical impulses of a subject."   *Id.* at 1:13-15 (emphasis added); *see also id*. at 5:61-63.  The patent's summary of invention further stresses that "an object of the present invention [is] to provide a fabric-based sensor for monitoring vital signs." *Id.* at 2:16-17.

And all embodiments of the '731 Patent exclusively focus on applications where the "vital signs" are a measurement of some essential body function, or functions that must occur for human survival.  *See* '731 Patent, 2:39-40; 2:55-56; 3:8-9.  Construing "vital signs" in accordance with every disclosed embodiment properly captures the scope of the actual invention.  *See Retractable Techs., Inc. v. Becton, Dickinson & Co*., 653 F.3d 1296, 1304-05 (Fed. Cir. 2011) (construing the term "body" in accordance with all disclosed embodiments to "tether the claims to what the specifications indicate the inventor actually invented.").

Sarvint's own website also interprets the term "vital signs" to mean measurements such as "heart rate, breathing rate, respiration rate, etc." Harris

Decl., Ex. 5; *see also* Dkt. 21-3 at 2, (Decl. of Jayaraman, confirming that "heart rate" is a vital sign).[9]

Sensoria's smart socks cannot infringe because they do not measure "vital signs," as the term is properly construed.  Sensoria's smart socks monitor gait-related data, such as cadence, foot landing location, foot contact time on the ground, and steps taken.  Vigano Decl. ¶¶23, 36, 38, 43.  The Sensoria smart sock sensors cannot and do not detect essential body functions such as respiration rate, pulse, temperature, blood pressure, EKG, or EEG." *Id.* ¶¶37, 43.

### 2.     The Sensoria sensors are not made "from fully-conductive fabric."

The Sensoria smart socks are made from a resistive material that measures and reacts to pressure; they are not comprised of electrically-conductive fabric as is required by the "fully-conductive fabric" limitation of Claim 1.

The limitation "fully-conductive fabric" is vague and is not defined in the specification of the '731 Patent.  Vigano Decl. ¶¶44–45.  Nonetheless, at a minimum, the term requires a fabric that is comprised of "fibers that conduct electrical impulses."  The specification confirms that "Electrical conducting fibers for the fabric sensor include, but are not limited to: (i) doped inorganic fibers; (ii)

---

[9] *See also* NIH, National Library of Medicine (explaining that "Vital signs include your heart beat, breathing rate, temperature, and blood pressure."), *available at* http://www.nlm.nih.gov/medlineplus/ency/article/002341.htm

stainless steel fibers; and (iii) thin gauge copper wires." '731 Patent, 4:42-44. The specification further confirms that the invention is drawn to a "sensor . . . receiving the electrical signals and transmitting them to the data-output terminal." '731 Patent, 2:46-48.

With this understanding, Sensoria's sensors cannot be held to be comprised of "fully conductive fabric," and thus do not infringe. The pressure sensors are made from fabric that has high ***resistivity properties*** for detecting force or pressure. Vigano Decl. ¶¶26–28, 46–48. The sensors are not conductive and cannot detect or measure electrical impulses emanating from a skin surface. *Id*. ¶¶27, 43.

Resistivity and conductivity properties represent measures of how easily electrons pass through a material. *Id*. ¶27. Resistivity indicates how much friction electrons encounter as they pass through a material. *Id*. Conductivity indicates how little friction (resistance) electrons experience as they pass through a material – *i.e.*, how easily and quickly electrons pass through a material. *Id*. Resistive materials present substantial friction and inhibit passage of electrons through the material; conductive materials present little friction and permit speedy passage of electrons through the material. *Id*.; *see also* John E. Lackey, <u>Fundamentals of Electricity and Electronics</u> 49-61, CBS College Publishing 1983 (1982) (Harris Decl., Ex. 8).

The inventors recognized this relationship; during the prosecution of the '731 Patent, the patentee explained "[r]esistivity is the opposite of conductivity." *See e.g.*, Harris Decl, Ex. 6 at 116. Thus, the resistive property of the Sensoria sensors with their lack of conductive fibers fail to meet the claim limitation requiring a "fully-conductive fabric."

### 3. The smart sock sensors do not include "individually conductive fibers."

The Sensoria smart sock sensors are made from fibers, which are a proprietary blend of nylon and another additive, that are then woven into a fabric, which is coated with a resistive coating material ***after being woven as a fabric***. The sensors therefore do not comprise "individually conductive fibers . . . each conductive fiber being individually conductive prior to incorporation into the fabric in the absence of conductivity imparted to the fabric or to the fibers after incorporation into the fabric," as required by Claim 1.

The Court should construe the term "individually conductive fibers" to mean "fibers that are each inherently conductive without any treatment or application of any conductive material." The patentee added the term "individually conductive" in response to the examiner's rejection of the claim:

> Applicants respectfully submit that the rejection of the claims based on the Flick reference fails to consider the ordinary meaning of the terms "individually conductive fibers". Flick

teaches the use of nylon fibers. Flick further teaches that to obtain conductivity in its apparatus a metalized coating must be applied. Thus, the Nylon fibers per se in Flick are not conductive. It is the metalized coating which is conductive. . . .

> . . . ***Applicants' fibers are each individually conductive fibers. In the ordinary meaning, this means that each individually conductive fiber of Applicants' sensor when taken individually (taken alone) is conductive. Thus, there is no need for the application of a coating to present conductivity as in Flick since in Applicants' invention the fibers are already conductive.***"

Harris Decl. Ex. 6 at 116(emphasis added).

Sensoria's smart sock sensors are not made of "individually conductive fibers."[10] First, Sensoria's fabric sensors are not conductive. Further, the Sensoria sensor is treated with a resistive coating ***after*** the individual fibers are woven into a fabric. Vigano Decl. ¶28, 47. The '731 prosecution makes clear that such fibers are not "individually conductive" as that term is used in the patent and thus the accused socks cannot be an infringement of the '731 Patent.[11]

---

[10] Further, the individual fibers are not "integrated therein by the process of knitting or weaving the fabric . . ." '731 Patent 6:28-29. Instead, the sensors are composed of woven fabric patches that are sewn to the inner surface of the knit sock. Thus, instead of an integration of fabric weaving or knitting, the Sensoria smart socks contain three separate patches of resistive e-textile fabric, which are attached—by sewing— to the inner surface of the sock. Vigano Decl. ¶47–48.

[11] Sarvint cannot now argue that such a coating permits the smart socks to meet the relevant limitation because Sarvint explicitly disclaimed during prosecution that such a coating would be sufficient. Harris Decl. Ex. 6 at 116 (*supra*).

    **4.**      **The Sensoria smart socks do not meet the limitation requiring "the electrical lead being formed from one of the integrated individually conductive fibers."**

The Sensoria trace is made from a completely separate and different material than makes up the sensor (Vigano Decl. ¶¶31–32, 49), and thus does not meet the limitation of claim 1 relating to the electrical lead. '731 Patent 6:34-36.

Claim 1 requires the electrical lead to be "***formed from*** one of ***the*** integrated individually conductive fibers." '731 Patent at 6:35-36 (emphasis added). The patentee's use of the definite article "the" confirms that "the integrated individually conductive fibers" of the electrical lead must be the same "individually conductive fibers" of the sensor. *See Tuna Processors, Inc. v. Haw. Int'l Seafood, Inc.*, 327 Fed. Appx. 204, 210 (Fed. Cir. 2009) ("the introduction of a new element is accomplished through the use of an indefinite article, not through the use of a definite article.").

Notably, the patentee substituted the language "being formed from" for "comprising" in response to the examiner's contention that the claim was indefinite. Harris Decl. Ex. 6 at 76, 83. Prosecution estoppel bars Sarvint from now arguing that the electrical lead may be comprised of something *different* than that which comprises the sensor.

23

The smart sock's electrical lead (the Sensoria smart sock "trace") provide a signal pathway between the resistive fabric sensors and signal transfer terminals, which are located in different locations on the smart socks. Vigano Decl. ¶30. The trace is **not** formed from one of the fibers that forms that fabric-based sensor. *Id*. ¶¶31–32, 49. The trace—and only the trace, not the sensor—is made from conductive yarn knit into the sock. *Id*. Thus, this limitation also is not met.[12]

## III.   The balance of harms tips in favor of Sensoria.

"An injunction should not be granted if its impact on the enjoined party would be more severe than the injury the moving party would suffer if it is not granted." *Litton Sys. Inc. v. Sundstrand Corp.*, 750 F.2d 952, 959 (Fed. Cir. 1984) . "The hardship on a preliminarily enjoined manufacturer who must withdraw its product from the market before trial can be devastating." *Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990). This balance tips ever further in favor of Sensoria because Sarvint does not even have a product on the market. In contrast, Sensoria has spent significant resources (financial and otherwise) to independently develop a product (the smart socks) that could not possibly compete with Sarvint's proposed t-shirt. Vigano Decl. ¶¶25, 37, 43–49.

---

[12] Sensoria asserts that the accused t-shirt and sports bra do not infringe the '731 Patent. Sensoria reserves the right to make (1) non-infringement contentions regarding t-shirt and sports bra, (2) additional non-infringement contentions regarding the smart socks; and (3) invalidity contentions regarding the '731 Patent.

**IV.    The public interest does not favor an injunction.**

Where, as here, the patentee has not made a strong showing of patent infringement, the public interest favors free competition—not an injunction. *See e.g., Voile Mfg. Corp. v. Dandurand*, 551 F. Supp. 2d 1301, 1308 (D. Utah 2008) ("the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain.")

Sarvint also states its "intention" to develop additional products that improve the quality of human life also favors an injunction.  Yet, there is simply no evidence that Sarvint will commercialize such products.  The public benefit asserted by Sarvint is speculative and should be ignored.  *See e.g, Aurora World, Inc. v. TY Inc.*, 719 F. Supp. 2d 1115, 1127 (C.D. Cal. 2009) (explaining in the context of a trademark infringement, "the court should weigh the public interest in light of the likely consequences of the injunction. Such consequences must not be too remote, insubstantial, or speculative and must be supported by evidence.").

## <u>CONCLUSION</u>

For the foregoing reasons, Sarvint's Motion for Preliminary Injunction should be denied.

Dated:  May 13, 2015                           Respectfully submitted

/s/ *John W. Harbin*_____        /s/ *Rachael A. Harris*_____
                                                Steven M. Auvil (PHV)
John W. Harbin                              Ohio Bar No. 63827
Georgia Bar No. 324130               James Alex (PHV)
Warren J. Thomas                          Ohio Bar No. 91092
Georgia Bar No. 164714               SQUIRE PATTON BOGGS (US) LLP
MEUNIER CARLIN & CURFMAN,     4900 Key Tower, 127 Public Square
LLC                                              Cleveland, Ohio 44114
999 Peachtree Street, NE                Telephone: (216) 479-8023
Suite 1300                                    Facsimile: (216) 479-8780
Atlanta, Georgia 30309                 steven.auvil@squirepb.com
Phone: 404-645-7700                    james.alex@squirepb.com
Fax:  404-645-7707
jharbin@mcciplaw.com                 Rachael A. Harris (PHV)
wthomas@mcciplaw.com            DC Bar No. 983044
                                                SQUIRE PATTON BOGGS (US) LLP
                                                2550 M. St, NW
                                                Washington, DC 20037
                                                Telephone: (202) 457-6000
                                                Facsimile:  (202) 457-6315
                                                rachael.harris@squirepb.com

                                                *Attorneys for Defendant*
                                                *Sensoria, Inc.*

## **CERTIFICATE OF COMPLIANCE**

Counsel  hereby  certifies  that  this  brief  has  been  prepared  with  14  point

Times New Roman Font in compliance with Local Rule 5.1(C).

                                                /s/ *Rachael A. Harris*_____
                                                Rachael A. Harris (PHV)
                                                DC Bar No. 983044

SQUIRE   PATTON   BOGGS   (US)
LLP
2550 M. St, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315
rachael.harris@squirepb.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2015, I electronically filed the foregoing document and all relevant attachments with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Peter F. Schoenthaler, Esq.
Bryan Baysinger
PETER R. SCHOENTHALER, P.C.
pfs@pfslawgroup.

N. Andrew Crain, Esq.
Dan R. Gresham, Esq.
Eric G. Maurer, Esq.
THOMAS HORSTEMEYER, LLP
andrew.crain@thomashorstemeyer.com
dan.gresham@ thomashorstemeyer.com
eric.maurer@ thomashorstemeyer.com

/s/ Rachael A. Harris
Rachael A. Harris (PHV)
DC Bar No. 983044
SQUIRE PATTON BOGGS (US)
LLP
2550 M. St, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315
rachael.harris@squirepb.com