## DECLARATION OF GOUTAM CHALLAGALLA

I, Goutam Challagalla, hereby declare and state as follows:

1.     I am over eighteen years of age, I am competent to testify to the matters stated herein, and the matters stated in this Declaration are true and correct and based on my personal knowledge. This Declaration is being offered for any purpose allowed by law.

2.     I have read the declaration of Mr. Douglas Kidder in support of the Defendant's opposition to Sarvint Technologies, Inc.'s motion for preliminary injunction. I have also read the declaration from other defendants in the case. In summary, the declarations by Mr. Kidder and the other defendants raise the following objections to my opinion that Sarvint has suffered irreparable harm due to their infringement of the '731 patent.

   a. The definition of the market in my original declaration is too broad.

   b. My opinion is based on an assumption of first-mover advantage.

   c. My opinion is based on the assumption that Sarvint will be a success.

   d. My opinion is speculative because Sarvint does not currently have a product.

e. Damages to Sarvint can be compensated monetarily and an injunction is therefore unnecessary.

3. In the remainder of this document, I explain why these objections are based on an incorrect and highly selective reading of my opinion.

My opinion has the correct definition of the market

4. I am fully aware that the '731 patent does not apply to various segments of the "wearables" market that I have discussed in my declaration. My opinion that Sarvint has suffered irreparable damage, however, is based solely on Sarvint competing in the smart apparel segment

5. There are two reasons why I also discuss the other segments of the wearables market:

a. First, the broader "wearables" market has products from large players such as Apple and Nike. The presence of products from these companies and from newly successful companies such as Fitbit has increased consumer awareness of "wearable" products and their benefits. While the smart apparel segment of the overall "wearables" market is nascent and emerging, it will benefit from the general awareness and growing consumer comfort with "wearable" technologies. Thus, consumer adoption of smart

apparel is likely to be relatively quick (see points 29 and 30 in the
original report). This will make it difficult for Sarvint to compete
with existing players who have had a head-start in the smart
apparel market by virtue of their infringement of the '731 patent.

b. Second, some of the defendants have products in multiple
segments of the "wearables" market, including in the smart apparel
segment. By linking products in multiple segments through an
integrated platform (e.g., the miCoach platform by Adidas), these
defendants can raise entry barriers for Sarvint and make it difficult
for it to compete in the smart apparel segment.

6.      Thus, the broader "wearables" market affects the smart apparel
segment in very significant ways, and that is why I reference the broader
"wearables" market.  My opinion, however, recognizes and is based on Sarvint
offering products in the smart apparel segment only.

<u>My opinion correctly accounts for the advantages and
disadvantages of being an early-mover</u>.

7.      I am also very familiar with the scientific literature that a first-mover
advantage is "not a foregone conclusion in any market – particularly not high-tech

3

markets."[1]   In a very well cited and early article, Professors Tellis and Golder

demonstrate that first-movers have high failure rates.[2]

8.      However, in the same article, the authors also state that:

"Another class of firms labeled "early leaders" has a minimal failure
rate, an average market share almost three times that of market
pioneers, and a high rate of market leadership. Early leaders are firms
that enter after pioneers but assume market leadership during the early
growth phase of the product life cycle." (emphasis added)

9.      It is important to point out that more recent research shows significant

advantages for early movers in certain industry segments.[3]   Thus, in the absence of

an injunction, existing players in the smart apparel segment can obtain significant

awareness benefits and, potentially, an insurmountable lead in the market by

infringing and continuing to infringe the '731 patent. This will make it difficult for

Sarvint to win in the smart apparel segment.

10.     It is also important to point out that technology environments evolve

faster than other environments and have shorter product life-cycles. This also

---

[1] Declaration of Mr. Douglas Kidder dated 05/13/15.

[2] Tellis, Gerard J., and Peter N. Golder. "First to market, first to fail? Real causes
of enduring market leadership." *MIT Sloan management review* 37.2 (1996): 65-
75.

[3] Robinson, William T., and Sungwook Min. "Is the first to market the first to fail?
Empirical evidence for industrial goods businesses." *Journal of Marketing
Research* 39.1 (2002): 120-128.

increases the advantages of being early in the smart apparel market for the defendants.

11.     In summary, while first-mover advantage is obviously not a foregone conclusion, being late to the market compared to the infringing defendants, and thereby missing the well-established and generally successful 'early leader' time-period, will raise entry barriers significantly for Sarvint and greatly decrease Sarvint's chances of success.

<u>My opinion is not based on the assumption<br/>that Sarvint will be a success</u>

12.     I am also fully aware that most early stage ventures are not successful. While that is undoubtedly true, my opinion that Sarvint has suffered irreparable damage is not based on the assumption that Sarvint will be a success. I have not stated that assumption in my declaration and it is purely speculative to have presumed that assumption in any of the opinions expressed. My opinion is simply based on the fact that the presence of the defendants in the smart apparel market segment has made it more difficult for Sarvint to succeed in that market segment than it otherwise would have been. That is, the presence of the infringing defendants in the smart apparel segment have reduced the chances of success for Sarvint.

<u>My opinion is not speculative</u>

13.    It is my understanding that Sarvint "anticipates having a final prototype available in the third quarter of 2015 and a commercially available product in the fourth quarter of 2015."[4] Thus, my opinion is based on my understanding from representations by Sarvint that it is working actively and diligently to bring products to market as expeditiously as possible.

14.    Accordingly, it is my opinion that the exclusive licensee does not need a product to be irreparably harmed.  Rather, if an exclusive licensee is actively developing a product, the ability of the exclusive licensee to successfully enter the market with its product can be irreparably harmed by infringement during the development period.

<u>Damages to Sarvint from Defendants' infringement</u>
<u>cannot be compensated monetarily</u>

15.    As discussed above, it is my opinion that the Defendants' infringement is irreparably harming Sarvint's ability to successfully launch its product once it is developed.  I know of no way to place a monetary value on such a harm.

16.    I do not believe that the harm to Sarvint can be corrected by monetary damages or that conditions can be restored to how they were prior to the alleged

---

[4] Declaration of Rajan Palaniswamy, dated June 4, 2015

infringers' patent infringement, since the awards and the recognitions have already been bestowed and the press coverage cannot be undone.

17.     Additionally, Sarvint will lose more than just sales if it is unable to successfully launch its product practicing the '731 patent.   It will also lose franchise and enterprise value and goodwill.  I know of no way to place a monetary value on such harms.

18.     It is also my opinion that Sarvint's reputation as the exclusive licensee of the owner of the '731 patent and the employer of the inventor of the '731 patent is being harmed in the marketplace by Defendants' infringement.  I know of no way to place a monetary value on such a harm.

19.     I also incorporate by reference the harms mentioned in my original declaration that cannot be compensated with monetary damages.

20.     I also reserve the right to further elaborate and expand on the above opinions at the upcoming preliminary injunction hearing.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information or belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

Dated:  June 11, 2015                    Respectfully submitted,


By _____

Goutam Challagalla, Ph.D.